[Civil No. 4287.  Filed November 25, 1940.]

[107 Pac. (2d) 508.]

In the Matter of MAL SHELLEY, a Member of the State Bar.

Mr. K. T. Palmer, for State Bar of Arizona.

Mr. Mark Wilmer, for Respondent.

McALISTER, J.—On March 29, 1940, a citation was issued by the Maricopa County Local Administrative Committee of the State Bar directing Mal Shelley, a member of the bar of this state, to appear before the committee and show cause why he should not be disciplined for professional misconduct. The order advised him of two specific instances of unprofessional conduct of which complaint had been made.

The first was that on June 10, 1939, he agreed to secure for Harry F. Long, of Phoenix, a divorce from his wife, Kathleen Hodges Long, for the sum of $47.50, including costs and attorney's fee; that pursuant to this agreement Harry F. Long paid him $47.50 on or before June 12, 1939, but he failed without just cause or excuse, to secure the divorce or file a complaint therefor or to refund the $47.50, or any part thereof; that he advised Harry F. Long some time after June 12 and prior to September 15, 1939, that he had secured a divorce for him and that he was free to marry again.

The second charge is that on or about October 9, 1939, he agreed to obtain a divorce for Jean Edmund, of Phoenix, on the ground of desertion, for the sum of $35, including attorney's fee and costs; that she paid him this sum on or about October 9, 1939, but, notwithstanding this, he failed and refused to file a complaint for the divorce or to repay her any part of this sum.

In response to this citation the respondent admitted that he had received the $47.50 from Harry F. Long for the purpose of obtaining a divorce for him and that he had not done so, the reason for his failure being that the money paid him by Long had been stolen from his office, and that the illness of his aged mother and himself in the spring of 1939 had made it impossible for him to obtain the money to file the complaint or repay Long. He alleged that he did not advise Long that the divorce had been secured or had become final.

In answering the charge relative to the Jean Edmund divorce he denied agreeing to secure it for $35 and alleged that she had failed to complete the payment of his fee, which, he testified, was $52.50, that he was under no obligation to procure or attempt to procure a divorce for her until she had paid him in

full and that he told her several times that it would be secured when she paid the balance of his fee. He denied informing her that the divorce complaint had been filed.

The local administrative committee, composed of three members of the state bar, heard the matter and at the close of the hearing, which was attended by respondent both in person and by attorney, found him guilty of professional misconduct and recommended his disbarment. This recommendation, together with the full record of the proceedings which had been reported stenographically and transcribed, was, as directed by section 35, chapter 66, Session Laws of 1933, the State Bar Act, forwarded to the board of governors which held a hearing at which additional evidence was taken, the respondent being present personally and by attorney. At the close of the proceedings the board filed with this court, without recommendation, the entire record, including the evidence in both hearings.

It appears from the testimony that on June 10, 1939, Mrs. Nina Long went to the office of respondent in Phoenix and consulted him about securing a divorce for her son, Harry, and that he told her he could file the case that day and advertise it the next week if she would get him $15. Thereupon she called her husband, Frank Long, who came to the office and gave respondent his check for that amount. Two days later Harry went to respondent's office for the first time and was told by him that the divorce complaint had been filed and that he wanted some more money, whereupon Harry paid him $32.50, the balance of the $47.50, which Mrs. Long, who made the agreement with him, testified included an attorney's fee of $25 and $22.50 for court costs and advertising. Nothing concerning the divorce appeared in the Monday papers, so Mrs. Long called at respondent's office Tuesday and

inquired whether the action had been commenced and he told her it had been filed and also advertised. From there she went to the office of the clerk of the court and ascertained that he had not filed it, whereupon she returned to his office with this information and he admitted that he had not filed it but said he would "right away." About a week later she called to see him and he told her he didn't have the money to file it and wanted her to get it for him again for this purpose and she told him that she couldn't get him any more money. After that she went to his office many times and he would always promise to file it, the last time being in September or October, but he never did.

In reply to the question whether he had any further conversation with respondent with reference to securing the divorce, Harry stated that two or three weeks after June 12 he and his mother went up to see why he hadn't obtained the divorce and he told them "it was all ready and I could get married; all I had to do was to wait for the final papers to come, but I had a divorce." A month or two after this, while still waiting for the final papers they called on him again and were told by him that he "hadn't even filed for it," and the reason given was that he had lost the money at the time they gave it to him; that someone came in and stole it from the top of his desk where he had it. Harry's testimony as to his reply was this, "I told him I thought he was a liar." Respondent then told them he was going to mortgage his home and get the divorce for him as soon as he could if Harry would be patient.

K. T. Palmer, a member of the bar, testified that Mrs. Frank Long, who had been his client for a long time, went to his office in September, 1939, and told him she wished to file a complaint with the bar association against Mal Shelley and asked how to proceed,

and as a result of their conversation Harry Long made an informal complaint which was lodged with Pat Nelson. Subsequently he was retained to secure a divorce for Harry but before undertaking it talked the situation over with respondent who frankly admitted that he had received the $47.50 and that it was in full of all costs and fees. He stated that he was in hard circumstances at the time and had to use the money but that he would pay it back if he had to do so at the rate of two dollars a month; that to obtain the money he would give a mortgage on his office furniture, books and home. He promised Palmer at least eight times after that to repay Long and on October 24 and December 2 wrote letters to that effect, but at no time did he say, or even intimate, to Palmer that the money had been stolen or that anything had happened to it other than that he had used it himself because he very badly needed it.

Respondent admitted receiving the money but testified that it was stolen one day while he was out of his office about ten minutes; that on account of the illness of his aged mother and himself in the spring of 1939 his business suffered and he was unable to raise the money to file the suit or repay Harry Long, though he had endeavored in every way, even to the extent of trying to mortgage his home, his office furniture and books to raise the money for this purpose but had been unable to do so. He denied telling Mr. Palmer that he had used the money.

In the Jean Edmund matter it appears from the record that she employed respondent on October 9, 1939, to procure a divorce for her for a fee of $35, including attorney's fee and court costs. At the time he advised her that he could start proceedings right away if she could pay him $15 down, so she took this amount to him the next day and paid the balance as follows: Five dollars on October 20 and $15 on December 8,

receipts being given her for both amounts. Respondent informed her at the beginning that it would take about sixty days before anything could be done, and that he would notify her by mail. Hearing nothing from him she went to his office a few days before the expiration of four months from October 9, but he was in no condition to talk and told her to return the following Saturday. She did so but he was not there, though she saw him on the street and was told by him that he had been out of town part of the time and so busy that he had not had a chance to notify her of anything; that it would take another sixty days, at which time he would notify her. Early in March, nearly five months after the employment, she went to the clerk's office and found that the complaint was still not filed, so she went to see him the next day and he told her he had been too busy with other things for the trial and had to put it off but promised to get to work on it that week. She went to the clerk's office again at the end of a week and also at the close of a second week and learned that he had not even yet filed the complaint. It was then that she complained to the bar association.

Respondent's testimony relative to the Jean Edmund matter was that he agreed to obtain the divorce for $52.50, including court costs and attorney's fee; that only $35 of that sum was paid and that he was under no duty to file the case until the full amount had been settled.

The local administrative committee found respondent guilty of both charges and a reading of the testimony convinces us that its conclusion was correct. The facts speak for themselves and do not call for any extended discussion. They disclose an utter disregard of respondent's duty to his clients. They show that he accepted a fee which included all costs from two persons to procure a divorce for them and that he did nothing whatever in either case. When asked by

his clients some weeks after his employment as to the status of their cases, he told them the complaints had been filed when such was not a fact. He even advised Harry Long that he could marry again when the case had not been started. He made no claim to his client that the money had been stolen until six or eight weeks after accepting the fee and he never did advise K. T. Palmer who took over the divorce suit for Long that this was true but told him he was hard up at the time and used the money. It is true that he promised Palmer to repay Long, even in small amounts if necessary, but he never did so. The fact that his business suffered in the spring of 1939 and that he was unable to borrow on his property is doubtless true, yet, these facts, instead of mitigating his wrongful use of the portion of the fee intended for costs, show the impropriety and danger of such a course. The evidence discloses, in addition, that no part of the $35 paid by Jean Edmund two months before the citation was issued against him was used to repay Long, or even to file a complaint for the person who paid it in full satisfaction of her attorney's fee.

It is our view that it would be unfair to the public to permit one guilty of such conduct as this record shows to continue to practice law, a profession the very nature of which calls for the highest fidelity to the cause of a client and, this being true, the protection of the public demands that he be permanently disbarred from the practice of law in this state. Such is the order of the court.

ROSS, C. J., and LOCKWOOD, J., concur.